22 MAG 6816

ORIGINAL

Approved: _____
Brandon C. Thompson
Assistant United States Attorney

Before:   THE HONORABLE BARBARA MOSES
United States Magistrate Judge
Southern District of New York

- - - - - - - - - - - - - - - - - - X
                                    :
UNITED STATES OF AMERICA            :      **COMPLAINT**
                                    :
        - v. -                      :      Violation of
                                    :      18 U.S.C. §§ 922(g)(1),
                                    :      924(a)(8), and 2
JUSTIN RAMIREZ,                     :
                                    :      COUNTY OF OFFENSE:
                    Defendant.      :      BRONX
                                    :
- - - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

        JAMA JOSEPH, being duly sworn, deposes and says that he
is a Detective with the New York City Police Department ("NYPD"),
and charges as follows:

## COUNT ONE
(Felon in Possession of a Firearm)

        1.    On or about August 11, 2022, in the Southern District of
New York and elsewhere, JUSTIN RAMIREZ, the defendant, knowing he
had previously been convicted in a court of a crime punishable by
imprisonment for a term exceeding one year, knowingly did possess
a firearm, to wit, a loaded 9-millimeter, purple SCCY pistol
bearing serial number C273342, and the firearm was in and affecting
commerce.

        (Title 18, United States Code, Sections 922(g)(1),
                    924(a)(8), and 2.)

        The bases for my knowledge and for the foregoing
charges are, in part, as follows:

        2.    I am a Detective with the NYPD and I have been personally
involved in the investigation of this matter.  This affidavit is
based upon my personal participation in the investigation of this
matter, my conversations with other law enforcement officers, as
well as my examination of reports, and body camera footage.

Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all of the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

3.    Based on my conversations with law enforcement officers, my review of law enforcement reports and records, and my review of body-worn camera footage, I have learned the following, in substance and in part:

a.    On the afternoon of August 11, 2022, an NYPD officer ("Officer-1") was conducting routine patrol with his partner ("Officer-2") in the 50th precinct. The 50th precinct is located in the north Bronx, which is located within the Southern District of New York. At or around 5:19 p.m., Officer-1 and Officer-2 were driving an unmarked police vehicle on West Kingsbridge Road between Bailey and Heath Avenues. At or around 251 West Kingsbridge Road, Officer-1 noticed a red Honda Accord with dark, tinted windows (the "Red Honda").

b.    Officer-1 has a diverse law enforcement skillset and background, including previous work in quality-of-life enforcement, narcotics, robberies, larceny, and firearms. In addition, in February of 2022, Officer-1 completed an automobile-crime training program. As part of this training, Officer-1 learned: (i) how to identify stolen vehicles; (ii) how to identify gray-market vehicles; and (iii) about New York and New Jersey laws regarding the tinting of vehicle windows.

c.    Officer-1 noticed the Red Honda immediately because all-four windows had a very dark tint and because the vehicle had a paper, temporary license plate. Based on his training and experience, Officer-1 knew that: (i) New York law requires tinted windows to be 70% or higher—meaning that the windows cannot block more than 30% of incoming light; (ii) New Jersey law prohibits the driver and front-passenger windows from being tinted; (iii) the Red Honda violated New York law given the extreme tint of the vehicle's windows;(iv) the Red Honda violated New Jersey law because all four of the vehicle's windows were tinted; and (v) paper license plates are often fraudulent, and individuals frequently use them to mask other crimes.

d.    On three separate occasions—in or around December of 2021, in or around February of 2022, and in or around May of 2022— Officer-1 pulled over three vehicles with temporary, paper license plates. Each of these vehicles was stolen. The Red Honda's

possession of a paper license plate heightened Officer-1's suspicion that the driver of the vehicle may be engaged in criminal possession of a forged instrument, may have stolen the vehicle, or may be engaged in another offense. Officer-2 ran the Red Honda's license plate number through NYPD databases. The search failed to return a VIN number, a registered owner, or any other information typically associated with a legitimate license plate. Given these strong indicia of fraud or other criminal activity, Officer-1 turned on his vehicle's lights and pulled the Red Honda over at or around 251 West Kingsbridge Road. Below are two still images of the Red Honda from Officer-1's body-worn camera:



        e.   Officer-2 called other NYPD officers and asked them to make their way to the scene. Officer-1 and Officer-2 then exited their vehicle. Seconds later, a male wearing a white top and red shorts, who was later identified as JUSTIN RAMIREZ, the defendant, exited the Red Honda and began running west on West Kingsbridge Road. Officer-1 observed that RAMIREZ appeared to be Hispanic. Below are two still images from Officer-1's body-worn camera depicting RAMIREZ exiting the right, rear passenger side of the Red Honda and running west on West Kingsbridge Road.





     f.   Officer-1 and Officer-2 both took off in pursuit of
RAMIREZ.   After running for a short period of time, Officer-1
decided to return to his vehicle so as to be in position to pursue
the remaining individuals in the Red Honda if they fled.  When
Officer-1 returned to his car, Officer-2 was narrating his pursuit
via radio and calling for backup.  Following the directions that
Officer-2 was providing over the radio, Officer-1 drove his car
west on West Kingsbridge Road, took a right on Bailey Avenue, and
took another right east onto West 229th street.  After making the
right turn, Officer-1 could see that RAMIREZ was running toward

Heath Avenue and, moments later, observed that RAMIREZ was running up the stairway leading up to Kingsbridge Terrace. Officer-1 drove his vehicle in close proximity to Kingsbridge Terrace, exited, and began running up the stairway in pursuit of RAMIREZ. Below is an image from Officer-1's body camera footage depicting his pursuit of RAMIREZ on the stairway leading to Kingsbridge Terrace.



g. Officer-1 caught up to RAMIREZ on the stairway, grabbed RAMIREZ's arms from behind, and attempted to arrest him. Shortly thereafter, two additional officers—Officer-3 and Officer-4-ran up the stairs and assisted Officer-1 handcuff RAMIREZ.

h. Officer-3 asked RAMIREZ if he had anything sharp on his person. In response, RAMIREZ offered a non-verbal, affirmative nod. Officer-4 then searched RAMIREZ. When searching RAMIREZ's left thigh area, Officer-4 felt something that felt like a firearm. Officer-4 reached into the left pocket of RAMIREZ's shorts and discovered a purple, SCCY pistol (the "Firearm").

i. Officer-4 walked the Firearm down the stairway and handed it to Officer-2. Officer-2 depressed the Firearm's magazine release and removed the magazine, which revealed that the Firearm was loaded.

j. Officer-1 and Officer-3 escorted RAMIREZ down the stairway and put him in a patrol car, which transported him to the precinct for booking.

k.   Officer-3 was primarily responsible for booking RAMIREZ. During this process, RAMIREZ said to Officer-3, unprompted and in substance and in part, that he had just spent seven years in prison, that he violated his parole, that he was running from law enforcement, and that he was famous in the 50th precinct.

4. Based on my review of criminal history records, I have learned, among other things, that on or about April 14, 2015, JUSTIN RAMIREZ, the defendant, was convicted upon a plea of guilty in the United States District Court for the Southern District of New York on one count of conspiracy to distribute and possess with intent to distribute narcotics in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C) ("Count One"), and one count of using, carrying, and possessing firearms in connection with a narcotics conspiracy in violation of 18 U.S.C. § 924(c)(1)(A)(ii) ("Count Two").  On or about November 15, 2015, Ramirez was sentenced principally to a term six months' imprisonment on Count One to be followed consecutively by eighty-four months' imprisonment on Count Two.

5. Based on my communications with a Special Agent from the Bureau of Alcohol, Tobacco, Firearms and Explosives who is familiar with the manufacturing of firearms and ammunition, I have learned that the Firearm was not manufactured in New York State.

WHEREFORE, deponent respectfully requests that a warrant be issued for the arrest of JUSTIN RAMIREZ, the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

Detective JAMA JOSEPH
New York City Police Department

Sworn to me in my presence
on this ⟋⟍ day of August 2022

THE HONORABLE BARBARA MOSES
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

6